UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ESTATE OF SCHERBAN,** *et al.*,<br><br>    **Plaintiffs,**<br><br>        v.<br><br>**SUNTRUST BANK, aka SUNTRUST BANKS INC.,** *et al.*,<br><br>    **Defendants.** | Civil Action No. 15-1966 (JEB) |

## MEMORANDUM OPINION

Plaintiffs and half-brothers Evgenyi, Ruslan, and Yevgen Scherban, all Ukrainian nationals, bring this action for recovery of any and all assets in the SunTrust Bank accounts of their deceased father, Yevgenyi Alexandrovich Scherban (Scherban), and his third wife and mother to Yevgen, Nadedja Nikitina Scherban (Nikitina). Scherban was allegedly a leading entrepreneur in Ukraine and one of the richest businessmen there in the early 1990s; according to Plaintiffs, his control over a natural-gas distribution network led to scuffles with criminal groups and ultimately to the 1996 assassination of him and his wife.

A few years before Scherban's death, he set up several bank accounts with SunTrust in Boca Raton, Florida, near one of his vacation homes. These accounts were in Scherban and Nikitina's names, but Plaintiffs state that the sons were the intended beneficiaries. Although their parents died about 20 years ago, the brothers have yet to obtain the assets. The quest of their suit – against SunTrust and a holding company in the British Virgin Islands – is to recover what remains of these accounts, as well as to remedy what they allege was an improper

1

conversion or confiscation of funds out of one of the accounts by means of the forgery of Nikitina's signature.

While there is much more to the story and this suit, an initial barrier blocks their claims: Yevgenyi and Nikitina's estates are listed as plaintiffs along with the three half-brothers. As to the estates, SunTrust correctly points out that an estate itself cannot properly be a plaintiff; only a legal representative acting on behalf of the estate has that power. As to the brothers, the Bank questions whether they have established their legal right to act as representatives for the estates. Defendant also asserts that Plaintiffs have failed to serve it properly with the Complaint. While these procedural requirements are not insurmountable, the Court agrees that they temporarily stop Plaintiffs in their tracks. The Court will thus grant the Motion and dismiss the Complaint with leave to amend.

**I.     Analysis**

At this point, the other named Defendant – Gwynfe Holding Ltd. – has yet to be served, so SunTrust has moved by itself to dismiss. Although the Bank raises various substantive defenses to Plaintiffs' claims, the Court will separately consider the two aforementioned procedural challenges first.

A.  Proper Plaintiffs

SunTrust initially asserts that Scherban and Nikitina's estates have been improperly included as Plaintiffs in this action. It argues that "[t]he Complaint fails to identify any representative of the Estates much less allege that any person with authority to act on behalf of the Estates has in fact authorized the bringing of the suit." Mot. at 8. Defendant maintains that only a duly appointed representative of the estates may bring claims on their behalf. Id. It is true that under Fed. R. Civ. P. 17(a), an estate may not be a real party in interest; instead, only the

executor or administrator of an estate may sue on its behalf. Rule 17 further states that for an individual acting as a representative, his capacity to sue or be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). In the District of Columbia, "[a] foreign personal representative administering an estate which has property located in the District of Columbia shall file with the Register a copy of the appointment as personal representative and a[n authenticated] copy of the decedent's will." D.C. Code § 20-341. "The term personal representative is strictly construed under D.C. law to mean only the decedent's executor or administrator." Estate of Manook v. Research Triangle Inst., Int'l & Unity Res. Group, L.L.C., 693 F. Supp. 2d 4, 17 (D.D.C. 2010); see also Saunders v. Air Florida, Inc., 558 F. Supp. 1233, 1234 (D.D.C. 1983).

Plaintiffs counter that this requirement applies only "if the claimed property is within the District," which is "not the case here, [since] the claim is not for property in this District." Opp. at 9. Although they do not spell this out, Plaintiffs presumably think the property is in Florida – where the accounts were first opened – and/or wherever the converted funds ended up. In taking such a position, Plaintiffs want to have their cake and eat it too. They claim that venue is proper in D.C. because "SunTrust does business in this District, and because all relevant documents, necessary for tracing the funds, and other relevant information, may be obtained in Washington, D.C." Compl., ¶ 16. Yet they seek to avoid D.C. registration rules by claiming the property is not in the District. At a most basic level, since SunTrust is a national bank operating with branches in both Florida and D.C., Scherban's assets in the Bank's accounts could be thought to be property located in either place, since SunTrust would ultimately have to surrender funds from some branch were Plaintiffs successful. In another sense, Plaintiffs cannot even be certain

3

of the location of the converted funds, which they allege the Bank initially wired to a bank in the Czech Republic.  See Compl., ¶¶ 48-50.

As Plaintiffs desire SunTrust to grant them recovery of their deceased parents' accounts and to compensate them for the wrongful conversion and confiscation of assets, see Compl. at 28-29, the Court believes the question more properly turns on whether the present action can be considered a form of property.  District of Columbia law suggests that it can be.  In Estate of Manook, the plaintiff – an Iraqi citizen's estate – brought claims under D.C.'s wrongful-death and survival statutes for his killing by several American defense contractors operating in Iraq.  See 693 F. Supp. 2d at 9-10, 16.  Defendants argued, as SunTrust does here, that the estate was not a proper plaintiff under the requirements of Rule 17 and D.C. law, and no personal representative of the estate had filed the requisite paperwork establishing their legitimacy.  Id.  The plaintiff countered that since it "ha[d] no property within the District, the Estate need not file with the Register."  Id. at 17.  The district court rejected that argument, instead concluding that since "Plaintiff's present action can be considered a form of property" under D.C. law, the failure to file proof of appointment of personal representative with the Register "prevents the Estate from bringing suit."  Id. (citing Bullard v. Curry-Cloonan, 367 A.2d 127, 132 (D.C. 1976)).  The court determined, however, that "this procedural oversight is curable," and it directed the plaintiff to file its documents with the Register within several weeks of the issuance of the Court's order.  Id.  A similar course of action is appropriate here.

This outcome seems particularly prudent since the brothers have not provided proper assurances to this Court that they are, in fact, legally able to bring claims on behalf of Scherban and Nikitina's estates.  Plaintiffs concede that while they were the intended beneficiaries, their names do not so appear on any of the accounts.  See Compl., ¶¶ 34-42.  Although they assert that

the affidavits of the brothers "state under oath that they are duly authorized to make a claim to the estate," Opp. at 9, this is contradicted by the affidavits themselves, which include no such statements.  See id., Attach. 1 (Affidavit of Ruslan Chtcherban); id., Attach. 2 (Affidavit of Yevgenyi E. Scherban); id., Attach. 3 (Affidavit of Yevgen E. Scherban).  Further complicating matters is the existence of a so-called "Personal Representative's Deed" of Scherban, which was attached to SunTrust's Reply.  See Reply, Exh. 2.  This document appears to name an Alan Lindsay "as Personal Representative of the Estate of" Scherban.  Id. at 1.  It also appears to have enabled Lindsay to sell real estate owned by Scherban in 2001 and to transfer proceeds from the sale to the decedent's SunTrust bank account.  Id. at 5.

Given the Court's uncertainty as to who the estates' legal personal representatives actually are – including what role, if any, Lindsay has – it will not proceed without Plaintiffs' first filing documents manifesting the appropriate appointment of a personal representative as well as authenticated copies of decedents' wills.  See D.C. Code § 20-341.  As this is a procedural hurdle potentially within Plaintiffs' ability to overcome, the Court will dismiss the Complaint with leave to amend so that they may remove the estates as parties and establish which named Plaintiffs are the proper representatives.

B.  Service of Process

Defendant also alleges a second procedural defect that may halt this case, arguing that under Fed. R. Civ. P. 12(b)(5) service of process was insufficient.  See Mot. at 6-7.  In such a circumstance, "[t]he party on whose behalf service is made has the burden of establishing its validity when challenged" by "demonstrat[ing] that the procedure employed satisfied the requirements of the relevant portions of Rule 4 and any other applicable provision of law." Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987) (citations and internal quotation marks omitted).

5

Adequate service of process requires "more than notice to the defendant," Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987), and Plaintiffs bear the burden of proving that Defendant was properly served.  See Fed. R. Civ. P. 4(c)(1); Light, 816 F.2d at 751.

As SunTrust is a corporation, Plaintiffs must conform to Fed. R. Civ. P. 4(h).  See Wilson v. Prudential Fin., 332 F. Supp. 2d 83, 87-88 (D.D.C. 2004).  Rule 4(h)(1) authorizes service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  The rule also allows service in accordance with the law of the state where process is served or the state where the subject district court is located.  Id.; Fed. R. Civ. P. 4(e)(1).  The District's rule, a mirror image of Rule 4(h), also authorizes service on corporations to be made "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  D.C. Super. Ct. R. Civ. P. 4.

The Bank contends that Plaintiffs improperly served Wendy Turner, who is a branch manager for SunTrust, and therefore not an officer, managing or general agent, or an agent authorized by appointment or law.  See Mot. at 7.  Turner, moreover, declares by affidavit that she is the branch manager of a local SunTrust branch in D.C. and is neither the resident agent for the Bank here nor authorized to accept service of a complaint against it.  See Mot., Exh. 1 (Affidavit of Wendy Turner).  Instead, "[u]pon information and belief," SunTrust claims that the registered agent for the Bank in D.C. is Corporation Service Company, located at 1090 Vermont Ave., Washington, D.C., 20005.  See Mot. at 7.

Plaintiffs counter that this cannot be true, as SunTrust is not even incorporated in the District, having let its incorporation lapse in 1990 and dissolving it shortly thereafter.  See Opp.

6

at 2.  Plaintiffs put forward evidence that the Bank's charter has been revoked, see Aff. of George Lambert, Exh. 2 (District of Columbia Corporations Search), meaning that SunTrust cannot have a registered agent in the District.  See Opp. at 2.  Attesting to the propriety of serving Turner, Plaintiffs attached to their Opposition an exhibit showing that Plaintiff's counsel George Lambert had communicated with Samuel Fuller, Senior Bank Examiner for the District of Columbia, who had responded that "[f]or a national bank, a branch manager should accept service on behalf of the bank."  Lambert Aff., Exh. 1 (Email Correspondence with Samuel Fuller) at 3.  This suggests that Wendy Turner – the branch manager for one of the D.C. branches of SunTrust – should have accepted service of Plaintiffs' Complaint.  Fuller, it should be noted, also furnished Lambert with contact information for the "bank representative[] that will accept service of process on behalf of the bank."  Id.  This appears to be Dan O'Neill, President, Greater Washington and Maryland Division, Sun Trust Bank, 1445 New York Ave., NW, Washington, D.C. 20005.  Id.

 No case precedent in this District appears to settle the question as to whether a bank branch manager who is not designated as a registered agent can nonetheless accept service of process for the purposes of compliance with Rule 4(h).  "The general rule with regard to a domestic corporation is that the person upon which a summons and a complaint are served must have some measure of discretion in operating some phase of the defendant's business or in the management of a given office."  Baade v. Price, 175 F.R.D. 403, 405 (D.D.C. 1997).  As to the question of which employees may be considered to have "some measure of discretion in operating" a defendant's business for the purpose of Rule 4(h), courts in this District have approached this question by analyzing the employee in question's functions, responsibilities, and position of authority.  See, e.g., Lopes v. JetsetDC, LLC, 994 F. Supp. 2d 135, 144 (D.D.C.

2014); Estate of Klieman v. Palestinian Auth., 547 F. Supp. 2d 8, 13 (D.D.C. 2008), vacated on reconsideration on other grounds, 82 F. Supp. 3d 237 (D.D.C. 2015); Flynn v. Pulaski Const. Co., Inc., No. 02-2336, 2006 WL 47304, at *4-5 (D.D.C. Jan. 6, 2006).

The parties dispute whether or not Turner satisfies Rule 4(h)'s standards, each putting forward plausible arguments. See Mot. at 6-7; Opp. at 5-8. Instead of attempting to resolve the dispute, however, the Court believes the wiser course is for Plaintiffs to simply re-serve Defendant. This makes sense here, where the Court is requiring amendment of the Complaint for improper Plaintiffs. The Court trusts that, to save all parties time and expense at this point, SunTrust's counsel will simply agree to accept service of the Amended Complaint.

Although the Court has the authority to dismiss an action outright on the basis of insufficient service of process, "the court can, in its sound discretion, 'direct that service be effected within a specified time,'" quashing the defective service without dismissing the case. Wilson, 332 F. Supp. 2d at 89 (quoting Fed. R. Civ. P. 4(m)). Choosing to quash service in lieu of dismissing the case is appropriate where "dismissing the plaintiff's case . . . would potentially subvert justice and unfairly prejudice the plaintiff, . . . [and the defendant would] not be prejudiced by affording the plaintiff the opportunity to comply with Rule 4." Candido v. District of Columbia, 242 F.R.D. 151, 164 (D.D.C. 2007); see generally Angelich v. MedTrust, LLC, 910 F. Supp. 2d 128, 132-33 (D.D.C. 2012).

**II.     Conclusion**

The Court, accordingly, will issue a contemporaneous Order dismissing the Complaint without prejudice with leave to amend by March 31, 2016, but not dismissing the action. Cf. Ciralsky v. CIA, 355 F.3d 661, 665, 667 (D.C. Cir. 2004).

                                          /s/ James E. Boasberg  
                                          JAMES E. BOASBERG  
                                          United States District Judge

Date:  February 26, 2016